## Case No. 17,184a.

### WARNER v. The ILLINOIS.

[18 Reporter, 11.] [1]

Circuit Court, E. D. Pennsylvania. May 5, 1884.

#### ADMIRALTY—CARRIER—DELIVERY.

1. A mere deposit of goods by a carrier upon his own wharf without separating and setting them apart from the rest of the cargo and without acceptance by the consignee and without a reasonable time and opportunity for the removal of the goods, does not constitute a delivery, and the goods remain at the risk of the carrier.

2. Where a carrier suffers goods of a consignee on being discharged from the vessel to become mingled with the rest of the cargo, and to be carried off by persons claiming to be entitled to similar goods, he is liable to the owner of the goods carried off, whether by fraud or mistake.

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

The facts appeared as follows: In March, 1877, sixteen bales of dry Servian goat skins were bought for the libellant in London, and being marked "W. B. T.," and numbered from 4015 to 4030 inclusive, were delivered at Liverpool to the agent of the steamship Illinois, on board of which vessel they were received on May 1, 1877, under a bill of lading, and carried

---

[1] [Reprinted by permission.]

to Philadelphia, where the Illinois arrived on May 31, 1877. During the next two days they were discharged from the ship on its own wharf, and were mixed up with skins of other shippers without any separation of the several lots. The consignees or their draymen were allowed to select the skins they claimed as theirs, without any control by the agents of the ships. The libellant, on June 2d, on examination of the skins on the wharf, could find none belonging to him. Afterwards five bales were found and accepted by him, but the remaining eleven were never traced. He claimed the value of the eleven bales, viz., $1,529.22. The district court gave judgment for the respondent. The libellant took this appeal.

J. Warren Coulston, for appellant.
H. G. Ward and M. P. Henry, contra.

McKENNAN, Circuit Judge (after stating the facts). The liability of the respondent depends upon whether there was a sufficient delivery of the skins in question to the libellant. It is clearly shown that they were not actually received by him. They were discharged from the vessel on the wharf at which she was moored, and of this the libellant had due notice, because he was at the wharf on the second day on which the ship was being unloaded to identify and remove his portion of the cargo. They were not, however, placed on the wharf by themselves or separately from other cargo of like character, but were mingled with other lots of goat skins discharged at the same time and consigned to other persons. Was there then a legal delivery of his skins to the libellant? I think not. The ship's duty was not fully performed by merely depositing the libellant's goods on the usual wharf; they must be there placed separate and apart from the residue of the cargo, so that they may thus be open to inspection and conveniently accessible to the owner and timely notice be given to him. Failure to observe either of these conditions will not absolve the ship from liability for the loss of the goods. The rule is thus concisely and accurately stated in Redmond v. Liverpool, New York & P. Steamboat Co., 46 N. Y. 584: "A mere deposit of the goods by the respondents on their own wharf, without acceptance by the consignee, not separated and set apart from the residue of the cargo, and without a reasonable opportunity and time for their removal, does not discharge the respondents, and they remain at the risk of the carriers." In The Eddy, 5 Wall. [72 U. S.] 495, Mr. Justice Clifford employs substantially the same language in defining the duty of a carrier by water in discharging his cargo not accepted by the consignee. The libellant's skins were improperly mixed on the wharf in the process of unloading with the skins of other consignees, and when on the day after the discharge of the cargo commenced the libellant applied at the wharf for his skins those in question could not be found, but had been removed by some one else without his sanction.

By reason then of this improper intermixture of the cargo there was no sufficient delivery of the libellant's goods, and the ship still remained under its obligation to deliver them to their true owner, and it is not relieved therefrom by their removal and appropriation by a stranger, whether by fraud or mistake. The Thames, 14 Wall. [81 U. S.] 107.

Decree for libellant for $1,529.22, with interest from June 2, 1877, and costs in both courts.